The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Ballance and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or Amend the Decision and Order.
* * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
STIPULATIONS
1. All parties are properly before the court and this court has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties stipulate and agree with respect to the following undisputed facts:
 a. Plaintiff was incarcerated in the North Carolina Department of Correction at the time of the incident alleged in this action.
 b. Nurse Crawford, Dr. Murphy, Sgt. Holt and Sgt. Prevost were employees or agents of the defendant acting within the scope of their employment at all times relevant to this action.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff filed his affidavit on 3 July 1992 alleging that Sgt. Clinton Holt, Sgt. Bruce Prevost, Nurse Jean Crawford and Dr. Robert Murphy were negligent in placing plaintiff on a top bunk at Orange Correctional Center for a five day period from 17 October 1991 through 22 October 1991 and that such negligence proximately caused injury to plaintiff's knee.
2. Plaintiff had a pre-existing knee injury dating back to 1986 that occurred prior to his incarceration at the N.C. Department of Correction in August, 1990.
3. On 17 October 1991, due to low population at Orange Correctional Center, the dormitory which housed plaintiff was closed down and the resident inmates were moved to other dormitories at that facility. At the time of the move, priority was given to the sick inmates for the vacant bottom bunks. Plaintiff was assigned a top bunk. At said time, Timothy V. Price, the officer making the assignment, was not aware that plaintiff had any problems that would prevent him from getting up and down from a top bunk. Officer Price had seen plaintiff working as a maintenance man and doing duties which involved climbing, cleaning out gutters, cleaning windowsills, replacing broken glass from windows, fixing top bunks and changing light bulbs in the dormitories. Many of these jobs required climbing up and down a ladder.
4. Plaintiff refused his assignment to the top bunk stating that he had medical problems that would prevent him from climbing up and down to and from the top bunk. Officer Price notified Sgt. Prevost who was the sergeant in charge. Sgt. Prevost instructed plaintiff to move to the top bunk and then contacted the nurse which was on duty at the time to have her check the records of plaintiff to see if there was any documentation of medical problems that would keep him from occupying the top bunk. No documentation of medical problems of that nature were found in the medical records checked by Nurse Crawford at said time.
5. On 19 October 1991, plaintiff was offered a bottom bunk in another dormitory at the facility which had become available. Plaintiff refused the bottom bunk stating that he did not want to move to the other dormitory because of the noise and he did not want to leave his friends. At said time, plaintiff had not had an appointment with the doctor and the examination by the nurse on 18 October 1991 had not found any medical reasons that would warrant concern about plaintiff using the top bunk. Nurse Crawford, on 18 October 1991, found no swelling and no discoloration. Plaintiff did, however, have some tenderness upon palpation.
6. Plaintiff saw Dr. Robert J. Murphy on 22 October 1991. Dr. Murphy ordered that plaintiff be assigned to a bottom bunk and he referred plaintiff to an orthopedic specialist at McCain Hospital. Plaintiff continued to work as a maintenance man for Orange Correctional Center until 24 October 1991, the day he was transferred to McCain Hospital.
7. At the time of Dr. Murphy's 22 October 1991 examination of the plaintiff, he was given a history by the plaintiff of an old injury that he had "re-hurt" three days ago. Plaintiff told Dr. Murphy that he had jumped down from a little roof and hurt his knee and also he had been jumping down from the top of the bunk to the floor instead of using the ladder. Based upon this history, plaintiff's complaint of a re-injury would have occurred on 19 October 1991, the same day he was offered and refused a bottom bunk.
8. Based upon the evidence presented, plaintiff aggravated a pre-existing condition to his right knee while jumping on and off the top bunk at Orange Correctional Center. Plaintiff may have also aggravated his pre-existing condition in July, 1991 as a result of an incident where he voluntarily or involuntarily jumped from a roof; however, this condition had resolved itself and was not symptomatic as of October, 1991.
9. Defendant was not negligent in assigning plaintiff to a top bunk. At the time of said assignment, defendant was not aware that plaintiff had a medical condition that could be adversely affected by his assignment to a top bunk. Defendant took reasonable steps to offer plaintiff a bottom bunk as soon as one became available even though they had no medical documentation that plaintiff required a bottom bunk.
10. Plaintiff contributed to his own injury by jumping on and off the top bunk when he knew or reasonably should have known that he might exacerbate his pre-existing injury to his right knee. Plaintiff also contributed to his own injury by refusing the bottom bunk when it was offered to him on 19 October 1991, a period of two days after he had been assigned to the top bunk.
11. Plaintiff underwent arthroscopic surgery on 19 December 1991 and was found to have a torn medial meniscus. Plaintiff was evaluated by Dr. Tom Slade Rand of Wilson Orthopedic Surgery and Neurology Center on 23 December 1993. At said time, plaintiff gave a history to Dr. Rand of having injured his knee on approximately 19 October 1991. Dr. Rand opined that it is likely that plaintiff did injure his knee while climbing up and down off his top bunk and that this could have resulted in the torn meniscus and the required arthroscopy. Dr. Rand further stated in his letter dated 25 January 1994 (Defendant's Deposition Exhibit 2) that it is likely that this could have been avoided if he had been on the first bunk or had in fact not been jumping down off the top bunk. Dr. Rand's opinion appears to be inconsistent and little weight is given to his opinion on causation. Dr. Rand, in said letter, further stated that he thought the physicians who would be most likely to provide the most accurate information regarding plaintiff's initial injury would be those physicians who saw him at that time, namely the physician who saw him on October, 1991. This physician who saw plaintiff in October, 1991 was Dr. Murphy.
12. Dr. Murphy opined that assigning plaintiff a top bunk for a period of 48 hours would not have aggravated plaintiff's pre-existing knee condition if he had used the steps to get down. He further opined that the fact that plaintiff jumped down from the top bunk instead of using the proper steps down aggravated his pre-existing condition.
* * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
There was no actionable negligence on the part of any named or unnamed employee, agent, servant or representative of the North Carolina Department of Correction which proximately caused the personal injuries for which plaintiff claims damages herein. The standard of care in a negligence action under the Tort Claims Act is the same as in all common law negligence actions against private parties. Bolkhir v. North Carolina State University,321 N.C. 706, 709, 325 S.E.2d 571 (1988). The named negligent employees must exercise that degree of care for the inmate's safety which a reasonably prudent man, under like circumstances, would exercise. Sparks v. Phipps, 255 N.C. 657, 122 S.E.2d 496
(1961). In addition, that breach of care must proximately cause the plaintiff to suffer danger. Only when that breach proximately causes damage to the plaintiff can the named negligent employees be found legally negligent. Register v. Administrative Office ofCourts, 70 N.C. App. 763, 321 S.E.2d 24 (1984). Plaintiff's injuries were proximately caused by his failure to use ordinary care to protect himself from injury while knowing of the danger of re-injury that could result from jumping off the top bunk. The doctrine of last clear chance is inapplicable to these facts.
* * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. IT IS THEREFORE ORDERED that plaintiff have and recover nothing from defendant and that his claim be DISMISSED WITH PREJUDICE.
2. Each side shall bear its own costs.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ ________________ MARY M. HOAG DEPUTY COMMISSIONER